Good morning, morning. The next case on the calendar is Tracy chance versus Ariel cook. Mr. Johnson, are you ready to proceed? Ready? Your honor may please the court. I'm Rick Johnson from Tallahassee, Florida and I have a simple syllogism here that I think takes care of this whole case. Let me say the major premise is that every violation of section 1985-2 is a crime. I have a minor premise. There's never a litigation privilege to commit a crime. I have a conclusion. There's never a litigation privilege to violate section 1985-2. Now, where do I get that major premise that every violation of 1985-2 is a crime? I get that from an en banc decision of this court in McAndrew versus Lockheed corporation which said unequivocally every claim arising under section 1985-2 necessarily alleges criminal activity. The criminal activity that's necessarily alleged is witness tampering under 18 U.S.C. section 371 and criminal conspiracy under 18 U.S.C. 1512-B. Now, I'm not saying that. You're saying that and I'm taking it from you and it's not a dictum. It's a holding and it's binding. So, I think on this issue the thing you have to get around is Faris or Farisi, the decision that addresses this statute specifically. Yeah, that's very important. That seems to be the essence of what's going on here and the thing I want to know is are we going to read Farisi as abrogating the prior panel rule because if we read Farisi the way that the appellees want to read Farisi and even the way that the judge below read it, we're reading necessarily Farisi as overturning the en banc decision in McAndrew or making an exception. But Farisi has a footnote in it, footnote 8, which distinguishes McAndrew as saying that because this involves a conspiracy between a client and his attorneys, it does not implicate the intercorporate conspiracy doctrine, which was what McAndrew was about. Yeah, and yeah, let's think about that for a minute because... Well, we don't have to think about it because we've already talked about it in Farisi, so that's what we're bound by as a panel. Well, no, you're not bound by that and you really couldn't be because what Farisi is doing is saying that McAndrew limited its holding to intercorporate conspiracy and McAndrew didn't do anything of the sort. McAndrew stated a general proposition that every violation of 1985-2 is necessarily, using the word necessarily, every violation necessarily is a crime and it didn't... To decide that or to say that, to decide the case before it. Well, it was still presented as a holding. It wasn't presented as a dictum. Do you agree that it didn't have to decide the question? I agree they didn't have to decide the question. They could have just decided intercorporate conspiracy, but they decided the broader principle and then applied it intercorporate conspiracy. Whether they went further than they had... Your argument is that the only way they could get to the result was to hold that it was a crime. Yes, they had to hold that it was a crime and it would be nonsense to hold that only the intercorporate conspiracy is a crime and that every other violation of 1985-2 is okay, is not a crime. That would have been absurd. There's no way the court could have held that. Moreover, even if you take what they said that attorney-client privilege creates an exception, there's no attorney-client privilege in this case. We're talking about a conspiracy between lawyers. It doesn't involve a client. There's no client communication anywhere in this case. I think that's a different point, right? And I think that might be your stronger argument that this is a 12B6, right? This was not a summary judgment. So you've alleged that these lawyers went off and filed this complaint. I mean, we haven't had any testimony about whether they were doing that pursuant to some legal direction by their client. We don't know why they did it. Right, right. And we didn't get far enough... You do have in the complaint that there was a probable cause search warrant. There was a search warrant issued and probable cause was signed off by a judge, correct? Correct. And so that, I think, I mean, Judge Lagoa's question I think raises what I would view as the stronger argument, frankly, for the other side in the case. So I'd like you to address that, which is that this is just not an alleged act to intimidate a witness. This was a, you know, if I wanted to intimidate a witness, I would threaten to file a complaint. And here there's no allegation of any threat to file the complaint. It's just the complaint itself is supposedly intimidating the witness. Yeah, well, there was no threat to file a complaint with a sheriff. There was a threat to do things that would have been legitimate things to do within the case, to move to exclude the tapes and to move for continuance on discovery and that sort of thing. But they had made it clear that they wanted the information out of the case. And it was logical that after saying that, going to the sheriff was a part of the conspiracy. But how does, I mean, I guess, but the Florida, I'm sorry, I'm sorry, I was just because, I mean, the problem I'm having with that is to go back to Judge Lagoa's question is, it seems like you're suggesting that reporting a crime that there was actually probable cause to believe a crime had been committed fits the definition of deterring by force, intimidation or threat. That's the, you know, that's the statutory language. And I'm having a hard time figuring out how reporting a crime, not threatening to report a crime, you know, just reporting the crime in and of itself fits that definition. I think the Supreme Court took care of that in the employment context. This very context, when in Burlington Northern versus Santa Fe Railroad, they cited approvingly Berry versus Stinson Chevrolet, where having somebody arrested because of making an employment discrimination complaint was actionable. But the issue, counsel, is that this particular statute, 934-03, prohibits the interception. By the way, you can do video, that's allowed, but anything that is audio, unless you have the consent of the other party in the state of Florida, is a criminal act. And in fact, under 934-06, any wire or oral communication that's intercepted cannot be used in any trial hearing or proceeding in or before any other court. Well, the 11th Circuit, which is you, held in McDonough versus Fernandez-Rundle, that that statute does not apply unless the person who is being recorded has given advance notice that they don't want to be recorded. And in this case, that building had signs all over it that you're going to be videotaped and tape recorded in this building. So under McDonough versus Rundle... By the security people who are running the building, not by random employees in the building. Well, it doesn't say by whom, but it's given notice that you'll be recorded and nobody who is recorded gave any kind of warning of, don't record me. And you have to, that's binding in this court. That's this court's decision that you have to say you don't want to be recorded. And I see my time is up. Well, if Judge Legault would give me a chance to ask you a follow-up question on that. You may, Mr. Judge Bradshaw. So the issue, I mean, I don't think anybody's suggesting at this point that, you know, your client actually committed a crime by doing this. The issue is that I could see a situation where falsely reporting a crime or reporting a crime where there was no evidence that a crime was committed, maybe that would fit the statutory definition of force, intimidation, or threat. It's hard to envision though a situation where there is probable cause to believe that a crime has been committed and reporting that fits that there is probable cause to believe a crime was committed fits the statutory definition of intimidation, force, or threat. Yes. In the first place, no reasonable person would believe that this was a crime after the McDonough decision came out. So that's a different argument. So are you arguing that there is no, that is key to say that there's no. When I took that to the prosecutor, the prosecutor just said, oh, you know, no, there's no way we're going to prosecute this. There's no way this is a crime. But I want you to look at the Burlington decision from the Supreme Court. And then the things that have come down since then, they're mostly under Title VII, but some of them are under 1983. These retaliation cases, and I cited five or six of them there in a brief following my citation of the Burlington Northern case, where all these people, when somebody says you discriminated against me because of my race, you sexually harassed me. And they say, well, you've been stealing from the company, and I'm going to have you arrested. And that is actionable. And I've cited that whole line of cases there. And I don't understand why that doesn't apply here. We've had the Supreme Court affirm the legitimacy of doing that. And we've had all these other courts affirm the legitimacy of doing that. If you're going to retaliate, it's the motive that matters. And it's not the worth or the merit of the criminal case that you could bring. One follow-up on this. I just, honestly, I have not looked at those cases. I looked at your brief where you cite those, but I didn't look at those cases specifically. But does the statute involved in those cases use the words deter by force, intimidation, or threat? Is it the same statutory language? No, it's just to retaliate in any way. Thank you, counsel. You'll have time remaining for rebuttal. Counsel, are you still splitting your time? Yes, Your Honor. I'm going to take the first five. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the court. My name is Michael DeLugo from the law firm of Wicker Smith in Orlando, Florida. And I'm here representing Ariel Cook, Margaret Zabiceka, and the Costangi-Brooks law firm. I'm going to refer to them collectively as Costangi, just so the court is aware, unless I'm referring to a specific individual. The claims that have been brought were brought pursuant to Section 1985-2. And I think that the district court orders in dismissing the first complaint and then dismissing the amended complaint got the analysis exactly correct. And the court was compelled to follow the decision of this court in Ferasi. And there is no way for the appellant to legitimately get around the Ferasi decision. Okay, let me suggest one way to legitimately get around the Ferasi decision. So, this is a 12-B-6, right? And so, the allegations as I read them in the complaint is just that two lawyers who were lawyers representing the folks in this litigation filed a complaint. I don't know whether that was an indication of... Judge DeLugo, are you still on the... No, I am. I'm here. I'm here. We just heard a noise. So, this is a 12-B-6. If it were a 12-B-6 about something that lawyers typically do in litigation, you wrote a threatening letter to my client. You said that you would bring a counterclaim. You said that if you testify in this case, we're going to file a lawsuit against you. I could see how Ferasi would clearly apply to that. The only thing I'm hung up on is, you know, this isn't a claim about something that lawyers clearly did in representing a client. It's sort of ancillary to what goes on. So, could you just address that? But it was part... The whole issue in this case was the audio taping of conversations within the building. And everyone was aware that Ms. Chance was doing that. And so, the were aware of that. And they took action by Ms. Zabajika writing a letter to counsel for Ms. Chance. Right. Clearly, that's part of working for your client. Right. So, the next step, or a different step, was to go to the Sheriff's Department for Wacola County and... And by the way, that's in paragraph 20 of the amended complaint, where they articulate that a letter was written to the lawyer for Ms. Chance, correct? That's correct. Yeah. Everything that I'm talking about is fact, is an allegation, because obviously this is a 12b6 motion. Informing them of the violation of the Florida statute. That's correct. And the counsel for Ms. Chance disputed that and expressed his annoyance at that. But moving forward, the brought this... Why would that be a normal thing that a defense lawyer would do? It's all part and parcel of the issue of the audio tapes and their use in... I understand that. But why would a lawyer go to the prosecutor's office? If they have evidence of a crime... But it's a crime under the statute. Is it not a crime under the statute? I think they have an obligation to go to the Sheriff's office. Well, going as a citizen to report a crime. But they're not doing it for their personal benefit. No, I understand. They're doing it as a citizen to report a crime. That's your best argument, isn't it? Well, they're doing it on behalf of their client. And so, and that's the issue. How do we know that they're... From the allegations in the complaint in and of itself, how do we know that they did this on behalf of their client? We don't. I don't think that there is an allegation that comes right out and says, they were doing this on behalf of Wakulla County. But I mean, I think with the letter, you know, it's clear that they're doing that on behalf of their client. There's no reasonable, there's no way to look at this in the favor of the plaintiff with respect to the letter and say that that was unrelated to the representation. I guess my concern is that it looks, if you look at the amended complaint favorable to the plaintiff, got to take all reasonable inferences in favor of the plaintiff. It seems like one inference you could draw would be the inference that Judge Joflat suggested that the reason they did this was not because their client directed them to or because it was the litigation. They did it because, you know, they saw evidence of a crime and they reported it to the authorities. And, but it can't be something that is looked at as being completely outside of the representation of Wakulla County because it's all part and parcel of the litigation in which they're involved. Well, let's say, let's, let me give you this hypothetical. Let's say instead of reporting it to the authorities, they had slashed the plaintiff's tires, right? They had said, you know what? We think you're a criminal. Get back at you. We're going to slash your tires. Is that because they learned about this crime or is that part and parcel of the representation? I think that slashing someone's tires would be a form of intimidation designed to prevent them from testifying in a case. Well, it doesn't matter whether it is. I guess my question is just, is it part and parcel of the representation? No. Okay. Why not? Because it would be something that is contrary to the rules regulated in the Florida Bar and would subject the attorney to sanctions in the form of possibly a suspension or even... Okay. So let's say, so let's say then it's not slashing the tires. Let's say that they, they think, you know what we ought to do? We ought to go to this person's house. We ought to let them know that we have evidence that they have violated a criminal law, and we're going to do that. Is that part and parcel of the representation? That's almost foracy. That's almost, you know, foracy is intimidation by threatening someone directly. Yeah. Assume they are intimidating. I mean, I assume that, you know, we're talking about foracy and the question of whether it's covered sort of by lawyer-client representation. I mean, I guess that's my point. Like, is that necessarily lawyer-client representation? Under foracy, it is. I mean, if someone, if intimidation of someone, threatening someone, actually firing someone as a means of trying to get them to withdraw a lawsuit is okay under foracy, then certainly what my clients did here, it falls within the ambit of what is. Mr. DeLugo, in normal circumstances, I go back to when I was a district judge eons ago, I would have expected the defense counsel to come to me. I'm presiding over this sex discrimination case, and tell me about this problem that he's having with his opposing counsel, and that there might be a prosecution that arises out of it while I'm trying this case. Do you follow me? I do. Okay. So it shocks me, really, in a sense, that counsel didn't go to the court. And so then the question becomes, why didn't they go to the court? They had some other reason. And that's why I said earlier that they're simply citizens going to the prosecutor while they're defending a civil lawsuit. And again, I keep on going back to the issue that because it has to do with the audiotapes of people in the Wacolla County Administration building, which was the subject of an evidentiary fight within the sexual discrimination suit, that it is all part and parcel of the same set of activities of representing their clients. Do you agree that the normal thing would have been to bring the matter to the district judge's attention? As an officer of the court, the officer of the court now, mind you, in a litigation, thinks that a crime is in process or has been committed in connection with something in the lawsuit. You think that an officer of the court ought to tell that to the district judge? I think so, but I think we're talking about a catch-22. I mean, where do you go first? Which takes priority? Your duty is to the court in this case. Unabashedly duty to the court in this case. I say that it's covered by the ethics, just common sense. The duty was to the court. So the question becomes, why didn't they go to the prosecutor? I can't answer that, Your Honor. Well, it does raise a question, does it not? I think in the context of a 12b-6 and just... Forget 12b-6. This is part of the facts alleged in the 12b-6. The lawyers did not go to the court, which is where they had an obligation, I speak for myself, had a bonding obligation to go to the court with this problem. But instead, they went to the prosecutor. And so then the question becomes, because we're on 12b-6 and we're inferring reasonable facts from facts alleged, what can you infer by going to the prosecutor? And again, my argument is that because we're talking about... Everything goes back to the fact that this was an issue within the course of the litigation. One inference would be that they're going to use the criminal proceeding in order to prevail in the lawsuit. Well, isn't the inference also that, again, it's a violation under Florida law to audio tape someone without their permission. And in fact, it's not just illegal, it is a crime. And any and all audio tapes cannot be used in any and all trials or any and all judicial proceedings. Under Florida law, that's what the legislature agreed on. Agreed. And I just want to briefly move on, because there were three elements that have to be shown. The second element is... Are they able to show... Is she able to show that she was not able to freely still testify or that she was prevented from going to court? That's correct. And we feel that the allegations of the complaint do not satisfy that. And there is no allegation in the complaint that says that she was prohibited from testifying or proceeding with her case? That is correct, Your Honor. And with that, I've used up my 10 minutes, so I would like to cede the rest of my time to my co-counsel. May it please the Court. My name is Eric Krebs. I'm representing Heather Encinosa and Neighbors Giblin and Nickerson, PA. Heather Encinosa, in this case, as alleged in the complaint, was the actual county attorney and not the litigation attorney under the underlying case with Ms. Chance. Neighbors Giblin is her law firm that she's a member of. I think that's a big distinction to be made here in the fact that the actions that were alleged related to the recordings made by a county employee on county property against other county employees was directly impacted by the county attorney. And her duty, as alleged, would have been to report potentially that part of a crime. So that distinction, as far as what should have happened within a litigation, is a little bit different for Ms. Encinosa in these cases. I want to state that we have Farisi, which has been cited at least three times by this Court. Judge Fletcher, you've actually been on one of those panels, the Cox case, that upheld the Farisi opinion prior to this. And in those cases, including Armstrong v. Freitas, Cook v. Waters, Cox v. Mills, they did all find that because of the activities landed within the scope of the client, then there could not be any conspiracy to commit these actions under. Let me read you this quote from Farisi, and I want you to explain how the allegations meet this. We said in Farisi that, quote, the attorneys did not engage in any conduct outside the scope of their representation. Furthermore, the actions and advocacy of the attorneys appear to have been for the sole benefit of their client rather than for their own personal benefit, end quote. And the question that we said was in that case was whether attorneys acting within the scope of their representation may be deemed conspirators in a Section 1985 conspiracy. So the way I read that is that the actions have to be solely on the basis of the representation. Am I reading Farisi wrong in terms of reading it that way? Not necessarily, Your Honor. I think the problem here is we are on 12b-6, and there's, as the district court stated, there's zero ultimate facts that actually show that there was any other reason for presenting this other than it happened. He does state that they were all conclusory. They don't actually require any kind of, you know, they, you can't use conclusory allegations to prove your case. He was given an opportunity actually to amend again. This was actually without prejudice initially. What allegations would lead us to the conclusion that the attorneys acted solely for the benefit of their client? I guess that's the question I have. It seems like, you know, I don't know what the evidence might ultimately be at summary judgment, but I mean, it could be that the attorneys testify and say that, no, we didn't actually do that. We weren't acting for the citizens, and we thought we needed to report a crime. I don't know what they would say. So what's in the complaint that would suggest that it was solely for the benefit of the client? Well, within the record itself and the initial disclosures, we'll do references and a footnote in our answer brief, they do state that the defendants contacted the county administrator and county employees related to the issues with the recordings. So in that respect, although it's not in the four corners, there's some leeway as far as 12b-6 that allows a judge to look at things that are within the record. But more so, there's just no allegations that it was done for anything other than for the county. I mean, he would have to allege that there was some other duty or some other reason why Ms. Encinosa went to the Sheriff's Department. There was a crime, potential crime, committed on county property in which she was the county to report this crime. Also, the level of intimidation, which you cited earlier, is just not there. This is a potential crime that to the county attorney, as far as the allegations, and after notifying through the Litigation Council, Ms. Encinosa's attorney, they're citing that this is an illegal activity. We're going to, you know, they reported a potential illegal activity to law enforcement. In fact, didn't they under the complaint, the amended complaint, as it's alleged, is they were sent a letter. Her counsel received a letter. Their response from her counsel was, this is ridiculous, in essence. And after that is when they went to the prosecutor. Correct. As far as the allegations of the complaint, I believe he said that the judicial applications in the workplace are vanishingly small. That doesn't mean never. That doesn't mean it doesn't happen. Clearly, as an advocate of mischance, he's going to present his argument that he does not wish his client to be arrested for any of these things. So, I believe those would be just advocacy. I believe in this case that the counsel was trying to use a procrastinating argument to fit the law, change the law to fit his facts. And I think Farisi is the controlling case. Can you talk about the elements? Does it satisfy the elements of, is there anything in the complaint that shows that she was not able to proceed or testify in the federal case? No, Your Honor. And if I may, my time's up to answer your question. My understanding from the, I don't have the specific paragraph numbers in front of me, but my understanding is this all came out at a deposition that she had already taken. That's when the recordings were made aware of. And she actually, in the brief, they argue, Chance argues that she was able to amend the underlying action to add a retaliation count against the county to, because of this criminal complaint, which then ended up with a resolution in October of that year after this case was filed, settling all of those claims against Walcola County, including the retaliation. And my understanding again also is that the district court judge allowed, would have allowed a further amendment, but counsel for Ms. Chance decided that they would not file a second amendment complaint and therefore requested an appeal. So they sat on the current operative pleading that we have before us. That is correct, Your Honor. They had an opportunity to amend and add additional facts and decided not to. That's all my time. Thank you. Your Honor, one point that we made in the complaint in this case, as opposed to the complaint in the sexual harassment case, was that she settled, the plaintiff settled the sexual intimidation of the possible prosecution and the emotional distress and the nervous breakdown that she had because of the police ransacking her house. So it did interfere with her case. It caused her case to terminate early for less money than it was worth because of what happened to her in the search. That's not in the complaint. It is in the complaint. It is in the complaint. Yes, it is. It is in the complaint. And look, there's a bright line here when it comes to crimes. If they had burglarized my office, it would have been in furtherance of the representation. If they had hacked into my computer, that would have been in furtherance of the representation. And nobody on this panel would fault me for having them put in jail for doing that or for bringing in 1985 to claim. Now, Lockheed says that this is necessarily a crime if they do what they did. Now, I've also heard something about the scope. I don't, I just, I'll just tell you. I, I, on the scope, so you've got paragraph 50 in your first amendment complaint that says that defendants Cook and Zabayaka, is that maybe right the way to pronounce it, acted outside the scope of representation by seeking criminal charges against plaintiffs? So you've got that allegation with respect to Cook and the Z one. Do you have a similar allegation with respect to the other lawyer, the county attorney? Sure meant to put one in. I don't have it in front of me, but if it's not there, but I wanted to say something about the scope, because I think the Supreme Court case in Wyatt versus Cole is very important here because they take the trouble to make the difference between a complaining witness and a lawyer. If a lawyer is representing a client in one matter and they go to the prosecuting authorities in some other matter to have them prosecuted, then that is outside the scope of representation according to the U.S. Supreme Court. You're not a lawyer when you're doing that. You're a complaining witness. You're the same as any other citizen. Can I, can I just, I just, I mean, I, I think I've sort of put my cards on the table as far as where I am. I mean, I think that your chief problem in the case is trying to explain how the filing the complaint was deterring someone by force intimidation or threat. Is there anything else you can give me on that? Well, I've got a whole section in my brief about what McAndrew says about force intimidation and threat, and they say that it's even the have to be hitting somebody. Oh, totally. I agree with you, but I guess where's the threat? What threat was made? Oh, the, the threat was we need to get this out of the case. Okay. So, so the law, you're writing a letter saying to the other lawyer, we think that this should not be admissible. That's the big threat. Is that, is it the police come to your house? When did they make, when did you allege that they made a threat of that? No, they never made a threat. Okay. So there's no threat. So what about intimidation? When did they intimidate? I'm saying the police coming to their house is a threat because you're there. They came to the house based on a warrant that was issued by a judge. Well, right. But a judge found probable cause. It wasn't like they sent a security team that went into the house. I mean, the police showed up based on a warrant. Well, that's probably. That was issued by a judge. There's probable cause that the thing in the warrant was at the house. That's not probable cause for an arrest or a prosecution. That's an amphibole in logic. It's using a word in one meaning when it's really another. Probable cause means probable cause of guilt. But you're tying the search to the lawyers. You're tying the search to the lawyers and what Judge Goh is mentioning in effect. Right, right. There's a causation problem because you had a judge intervening. Well, a judge intervening, and this is what I'm saying now about probable cause, is that that's not probable cause of guilt. That's probable cause that a thing is in the home. That's a different kind of probable cause. It's just a sleazy amphibole. You're attributing the search to the lawyers. Attributing the search. Yeah, and there's an intervening cause and that's the judge. The judge in effect causes the search. Well, right. What I'm saying is that Barry Stevenson versus Chevrolet, which the Supreme Court cited, says it doesn't matter that there's an intervening judge. What matters is the motive. That's why you're getting hung up on the probable cause rather than the motive. That's in those cases where the defendant is overbearing the judicial authority. No, it's not where it's overbearing the judicial authority. In the sense that it's not operating as it's supposed to operate. No, it's the Supreme Court's case in Lozeman and it's your case in DiMartini versus Town and Gulfstream where you said that there's an exception to the probable cause and that's where the motive is higher up than the cop on the beat. It involves a fundamental right like the right to petition the court. I laid all that out in the brief and I'm over time and I just hope, please read the brief. I can't get anybody to engage with this. Counsel, you should assume that we've all read the briefs. The panel knows the record and has read the briefs. Thank you very much for both of your arguments.